IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TINA LAWSON :
  Plaintiff,

 v. :
           CIVIL ACTION
CITY OF PHILADELPHIA;   NO. 18–1912
FRANK BRESLIN, *Individually*;
IOLA HARPER, *Individually*; :
HARRIS & HARRIS; ARNIE
HARRIS, *Individually*; and, :
FRANCES BECKLEY, *Individually*
  Defendants.

## MEMORANDUM

**JONES, II J.**                February 22, 2019

### I. INTRODUCTION

  Plaintiff Tina Lawson commenced the instant action against the above-captioned parties, alleging various state and federal claims relating to a joint venture agreement between Plaintiff and Moving Defendants (hereinafter "Harris Defendants"). Harris Defendants have filed a Motion to Compel Arbitration based upon an arbitration provision contained within the joint venture agreement. For the reasons set forth below, said Motion shall be denied.

## II. BACKGROUND

On July 1, 2016, Plaintiff and Harris Defendants entered a joint venture agreement containing a "Provision for Arbitration." (Defs.' Mot. Compel Arb'n 2; Pl.'s Resp. 5.) Said provision reads as follows:

> **Section 13. Provision for Arbitration**
>
> The parties hereto shall resolve any dispute(s) or conflicts, first through mediation in case of dispute or conflict using the US Standards of Arbitration. If this is not suitable to the parties hereto, the applicable laws of the Commonwealth of Pennsylvania shall apply and each may consult their attorney.

(Defs.' Mot. Compel Arb'n, Ex. A §13; Pl.'s Resp. Ex. A.)

On or about May 7, 2018, Plaintiff filed a Complaint with this Court, alleging violations under 42 U.S.C. §§ 1981, *et seq.*, fraud, and other claims arising, in part, out of the relationship and agreement between Plaintiff and Harris Defendants. (Defs.' Mot. Compel Arb'n 2-3; Pl.'s Resp. 1-2.) Harris Defendants now seek enforcement of the foregoing provision.

## III. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses*, 460 U.S. at 24 (citing 9 U.S.C. § 2). Section 2 further "reflects the fundamental principle that arbitration is a matter of contract," and "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). Accordingly, "[a] party aggrieved by the alleged failure,

2

neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

To that end, "Because 'arbitration is a matter of contract… [and is] predicated upon the parties' consent,' a court ruling on a motion to compel under §4 must first determine if the parties intended to arbitrate the dispute." *Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013)). Therefore, "[w]here a party contests [the formation, enforceability, or applicability of an arbitration agreement], 'the court' must resolve the disagreement." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010); *see also Guidotti*, 716 F.3d at 772 ("We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate."); *Antoniak v. Armstrong*, No. 18-1263, 2019 U.S. Dist. LEXIS 3576, at *5 (E.D. Pa. Jan. 8, 2019) (noting if there is a question of "whether the parties should be arbitrating at all," it is for the court to resolve).

Before compelling arbitration, a court must determine: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). In determining whether a valid arbitration agreement exists, courts "turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); see also *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (same). To that end, "[l]ike other contracts [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-*

*Center*, 561 U.S. at 68 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

When entertaining a motion to compel arbitration, the district court must apply either the standard for a motion to dismiss, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure, or the summary judgment standard, found in Rule 56. *Guidotti*, 716 F.3d at 773-74. A motion to compel arbitration should be evaluated using a motion to dismiss standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause[.]'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). An arbitration clause may be deemed "apparent" even when a "contract[ ], though not appended to the Complaint, [is] integral to, and referenced in, the Complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014). Accordingly, when "the arbitration clause at issue appears in a contract relied upon in the Complaint, [the court] resolve[s] the motion to compel arbitration under a motion to dismiss standard[.]" *Id. See also Sanford v. Bracewell & Guiliani, LLP,* 618 F. App'x 114, 117-18 (3d Cir. 2015) (applying 12(b)(6) standard, finding "the affirmative defense of arbitrability" was apparent on the face of the Complaint because of Plaintiff's claim of breach of contract).

Conversely, the summary judgment standard should be applied "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue[.]" *Guidotti*, 716 F.3d at 776. Under these circumstances, the court may order limited briefing and discovery on the issue of arbitrability. *Id.*

A disagreement as to arbitrability is not sufficient in itself to warrant application of the summary judgment standard, because a motion to compel arbitration is necessarily predicated by the parties' disagreement to arbitrability. *Silfee*, 696 F. App'x at 578 (explaining that interpreting *Guidotti* to mean that 12(b)(6) "applie[s] only in cases where a party does not question the arbitrability or applicability of the arbitration agreement . . . would render the Rule 12(b)(6) standard a nullity[.]" (internal quotes omitted)). Instead, "the Rule 12(b)(6) standard is appropriate unless 'the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue.'" *Id.* (quoting *Guidotti*, 716 F.3d at 776). In *Silfee*, there was a concededly authentic arbitration provision, and plaintiff argued that the arbitration agreement was unenforceable for "pure legal" reasons. He did not produce additional facts to place the agreement to arbitrate at issue and did not seek additional discovery to do so. The case was remanded to the district court for application of Rule 12(b)(6), as opposed to the summary judgment standard that had been applied by the district court.

In this case, an arbitration clause was apparent on the face of the documents relied on in the Complaint. The parties entered a Joint Venture Agreement ("JVA"). (Compl. ¶ 14.) The JVA contains a "Provision for Arbitration." (Defs.' Mot. Compel Arb'n 2, Ex. A §13.) Harris Defendants attached the JVA to their Motion to Compel Arbitration, and in her Response, Plaintiff attached an identical copy of the JVA. Though not attached to the Complaint, Plaintiff makes frequent reference to the parties' JVA throughout the Complaint. (Compl. ¶¶ 14-16, 31, 37-38, 40-41, 44, 51-52, 54-55, 61-62, 64, 66-68, 71, 74, 89, 101, 108, 110, 113-114, 116, 121, 134, 184, 186, 195, 197-198, 200, 202, 217-21, 223, 231-33, 236-39, 244, 246-247, 253, 255-57, 259-260, 280, 282-85, 287-288, 300, 302-303 (totaling 69 references).) Furthermore, several of Plaintiff's claims, including breach of contract, appear to be based on the parties' contractual

5

relationship formed by the JVA. (Compl. Counts VI-XIII, XV, XVII.) The JVA is not only relied upon, but is integral to Plaintiff's Complaint. The "Provision to Arbitrate" is apparent on the face of the JVA. Thus, the motion to dismiss standard is the appropriate standard to apply to Harris Defendants' Motion to Compel Arbitration. *CardioNet*, 751 F.3d at 168 n.2.

A 12(b)(6) assessment is also appropriate because the parties' disagreement to arbitrability pertains to the validity of the contractual language. The parties' agreement to the contract, and its provision for arbitration, is undisputed. Specifically, Plaintiff concedes, "[i]t is undisputed that plaintiff Lawson signed and entered into a joint venture with Harris… It is also conceded that said joint venture includes an arbitration clause." (Pl.'s Resp. 1.) Similar to *Silfee*, Plaintiff's arguments are purely legal, and she does not seek additional discovery or assert any additional facts pertaining to the agreement or the provision. The parties simply advocate different legal interpretations of the contract's language. Plaintiff challenges the enforceability of the arbitration provision, based upon the language's alleged ambiguity and lack of requisite clarity. (Pl.'s Resp. 7-9.) This argument is dispositive, making Plaintiff's additional two arguments moot.[1]

---

[1] In addition to ambiguity, Plaintiff argues the scope of the arbitration clause would not cover her claims under Section 1981 and that the contract is unenforceable due to fraud. (Pl.'s Resp. 7.) Plaintiff incorrectly asserts Section 1981 violations cannot be subject to arbitration and were excluded from the arbitration provision at hand. (Pl.'s Resp. 9.) Claims under Section 1981 are not, as a general matter, precluded from arbitration. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998); *see also Cuie v. Nordstrom, Inc.*, No. 05-CV-4771, 2005 U.S. Dist. LEXIS 26698, at *14 (E.D. Pa. Nov. 1, 2005) (finding racial discrimination claims in violation of Section 1981 falling within the scope of the arbitration agreement). Moreover, there is no language in the instant arbitration provision that indicates Section 1981 claims would be treated differently from any other dispute. (Defs.' Mot. Compel Arb'n, Ex. A, §13 (covering "any dispute(s) or conflicts").)

Plaintiff's claim of fraud in this case would also fail to exempt her from arbitration. While arbitration agreements may be invalidated by "generally applicable contract defenses, such

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After *Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678; accord *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

---

as fraud, duress, or unconscionability," *Rent-A-Center*, 561 U.S. at 68, (2010), a party challenging the validity of an arbitration provision due to fraud, "must challenge the validity of the arbitration agreement itself, and not, broadly, the contract as a whole." *Corchado v. Foulke Mgmt. Corp.*, Civil Action No. 15-6600, 2017 U.S. Dist. LEXIS 21457, at *7-8 (D.N.J. Feb. 14, 2017) ("'[I]f the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the "making" of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). Plaintiff Lawson alleges a grand conspiracy was at play when she signed the JVA with Harris Defendants. (Pl.'s Resp. 10.) She does not, however, specifically allege she was fraudulently induced into the arbitration clause of the JVA. In fact, Plaintiff concedes she agreed to that specific provision. (Pl.'s Resp. 1.) While fraud is a defense to contract enforcement under Pennsylvania contract law, Plaintiff does not allege she was defrauded into her agreement to the poorly drafted "Provision for Arbitration." Accordingly, Plaintiff's third argument is unavailing.

## IV. DISCUSSION

### A. Validity of the Agreement to Arbitrate

It is well settled that "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009). Although the FAA reflects a "strong federal policy in favor of the resolution of disputes through arbitration," *Alexander*, 341 F.3d at 263, "this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis*, 560 F.3d at 160 (internal quotation marks omitted). *See also Granite Rock*, 561 U.S. at 303 (policy favoring arbitration does not override framework for establishing whether there is a valid, enforceable agreement between the parties to submit the dispute in question to resolution through arbitration). Whether such an agreement exists is a question of state contract law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). *See also Kirleis*, 560 F.3d at 160 ("To determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts.") (internal quotation marks omitted). The parties do not dispute that Pennsylvania contract law applies in this matter. In Pennsylvania, "contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis*, 560 F.3d at 160 (citing *Blair*, 283 F.3d at 603).

Both parties agree they intended to be bound by the contract, and neither party argues this is an issue for consideration. (Defs.' Mot. Compel Arb'n, 5-6; Pl.'s Resp. 1.) Instead, the present dispute arises from the interpretation of terms in the contract, and whether they are insufficiently definite to enforce. Under Pennsylvania contract law, an agreement to arbitrate must be "clear

and unmistakable." *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287 (Pa. Super. Ct. 2005).[2] Further, the essential terms must be definite enough to provide a basis for enforcing the agreement. *Biddle v. Johnsonbaugh*, 664 A.2d 159, 163 (Pa. Super. Ct. 1995). Whether contract terms are ambiguous is for the court to decide as a matter of law. *Tuthill v. Tuthill*, 763 A.2d 417, 420 (Pa. Super. 2000). "An ambiguity is present if the contract may reasonably be construed in more than one way." *Wert v. ManorCare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015) (citing *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004)). Under Pennsylvania contract law, where an arbitration provision is ambiguous, its meaning is construed against the drafter. *Borgia v. Prudential Insur. Co.*, 750 A.2d 843, 850 (Pa. 2000). In this case, it is undisputed that Defendants Harris drafted the JVA. (Pl.'s Resp. 10.)

The disputed language in the JVA falls under the section titled "Provision for Arbitration." (Defs.' Mot. Compel Arb'n, Ex. A §13.) This Court finds the language of that section unclear and too ambiguous to be enforced.

1. **Section 13 of the JVA**

Despite its title of "Provision for Arbitration," the disputed provision does not contain a clear mandate to resolve disputes by arbitration alone. (Defs.' Mot. Compel Arb'n, Ex. A §13.) The first sentence of the provision directs the parties to begin any dispute process with mediation: "The parties hereto shall resolve any dispute(s) or conflicts, ***first through mediation*** in case of dispute or conflict using the US Standards of Arbitration." (Defs.' Mot. Compel Arb'n, Ex. A §13) (emphasis added). Mediation is not arbitration. Mediation is a distinct and

---

[2] In its Reply, Harris Defendants argue that the "clear and unmistakable" standard "conflicts with recent precedent of the United States Supreme Court." (Defs.' Reply 5) (citing *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (U.S. 2017)). The Third Circuit disagrees. *See Dicent v. Kaplan Univ.*, No. 18-2982, 2019 U.S. App. LEXIS 872, *4-5 (3d Cir. Pa. January 10, 2019) ("[A]rbitration agreements should not be extended by implication but rather parties should agree to arbitration in a clear and unmistakable manner.") (citation and quotation marks omitted).

9

separate alternative dispute resolution method. Although the provision directs use of the "US Standards of Arbitration" in mediation, it does not clearly direct the parties to proceed to arbitration. (Defs.' Mot. Compel Arb'n, Ex. A §13.)

Harris Defendants argue the provision's directive to mediate and reference to the application of arbitration standards *implies* a mandate that the parties proceed to arbitration if mediation fails. (Defs.' Mot. Compel Arb'n 8) ("mediation procedure establishes a *preliminary* phase to resolve any 'disputes or conflict' that precedes arbitration") (emphasis in original); Defs.' Reply 3-4.) However, the law requires that an arbitration agreement be "clear and unmistakable," not implied. *Quiles*, 879 A.2d at 287. The first sentence of the provision lacks a clear and unmistakable directive to arbitrate. Harris Defendants have not provided this Court with any specific language in the provision that mandates the parties to first begin with mediation, and then proceed to arbitration. Accordingly, the first portion of this provision does not clearly and unmistakably communicate the necessary mandate that would indeed constitute a valid agreement to arbitrate.

### 2. Conditional Language of Section 13

Section 13's preliminary directive to mediate is immediately conditioned by the following language: "If this is not suitable to the parties hereto, the applicable laws of the Commonwealth of Pennsylvania shall apply and each may consult their attorney." (Defs.' Mot. Compel Arb'n, Ex. A §13.) This second sentence of the provision carries further ambiguity. The vagueness of "if this is not suitable" offers no clarity to the first sentence's meaning, therefore a reader can easily assume the second sentence offers an alternative to the directive to start with mediation.

The parties herein disagree on how the phrase, "not suitable to the parties hereto" should be construed. Harris Defendants argue the provision requires that *both parties agree* that

mediation or arbitration is unsuitable before pursuing alternative methods to resolve a conflict or dispute. (Defs.' Mot. Compel Arb'n 4.) Plaintiff argues the language means *either party* could find mediation unsuitable and pursue dispute resolution by an alternative method. (Pl.'s Resp. 8.) Neither party asserts there is additional evidence that might guide this Court in determining what the parties' intended meaning was in agreeing to this language. Moreover, neither party offers any legal authority in support of their proposed interpretation of the phrase's meaning.[3] Nowhere else in the contract do the parties clarify how one should determine the suitability of arbitration, nor do they waive the option to determine suitability at a later time. Both parties' interpretations are reasonable readings of the same language. As the language of the provision's second sentence could reasonably be construed more than one way, the terms provided for therein are ambiguous. *Wert*, 124 A.3d at 1259.

The second sentence of the provision concludes with the following: "the applicable law of the Commonwealth of Pennsylvania shall apply and each may consult their attorney." (Defs.' Mot. Compel Arb'n, Ex. A §13.) This language could be construed as simply defining which law governs without suggesting an alternative forum as Harris Defendants argues, or it could be construed to mean the parties should commence suit in Pennsylvania or federal court, applying Pennsylvania law, as Plaintiff suggests. (Defs.' Mot. Compel Arb'n 4; Pl.'s Resp. 8.) Again, the phrase is unclear and continues to reflect the ambiguity found in the first sentence of the provision.

---

[3] The cases cited by Harris Defendants regarding "definiteness" of terms are readily distinguishable from the ambiguous language at issue in this matter. (Defs.' Mot. Compel Arb'n 6-7.) Each example provided by Harris Defendants is unequivocally clear in its express directive to *only* resolve disputes by arbitration, and none contain conditional language.

### 3. The Contract as a Whole

In support of enforcement of the arbitration provision, Harris Defendants point to a separate provision contained within the JVA: "Provision for Commencement and Termination." (Defs.' Mot. Compel Arb'n 6.) Harris Defendants argue a reading of the contract as a whole supports their conclusion that the parties agreed to arbitration. (Defs.' Mot. Compel Arb'n 6.)

As a general principle, a contract should be read as a whole and no provision should be interpreted to be meaningless. *See Sidorek v. Chesapeake Appalachia, LLC*, No. 3:13-0208, 2014 U.S. Dist. LEXIS 38190, at *12 (M.D. Pa. Mar. 24, 2014) (noting "contracts must not be interpreted so as to render clauses superfluous or meaningless.") (citations omitted); *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 167 (3d Cir. 2011) (same); *Engelhard Corp. v. NLRB*, 437 F.3d 374, 381 (3d Cir. 2006) (reiterating that "all provisions of a contract [should be read] together as a harmonious whole.").

The language Harris Defendants cite is as follows: "This Agreement shall . . . terminate with the mutual consent of the parties hereto, or at the point of dispute for just cause determined by conflicting irreconcilable difference determined by arbitration." (Defs.' Mot. Compel Arb'n 6 Ex. A, §16). In doing so, they argue the reference to termination after arbitration underscores the parties' agreement to arbitrate disputes. (Defs.' Mot. Compel Arb'n 6 Ex. A, §16). However, this provision does not indicate the parties would necessarily have gone through the arbitration process prior to arriving at termination. Therefore, this provision may be read to apply only to disputes regarding the potential dissolution of the entire JVA via arbitration, *in the event the parties do not mutually consent to dissolution*. Further, the provision does not clearly indicate that the JVA may be terminated only after arbitration. Accordingly, this provision is neither inconsistent with contract as a whole, nor superfluous.

### 4. Enforcement of Provision to Arbitrate

When deciding a motion to compel arbitration under Rule 12(b)(6), courts should examine whether there can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision. *Guidotti*, 716 F.3d at 777. Furthermore, under Pennsylvania law, any ambiguity must be construed against the drafter of the contract. *Wert*, 124 A.3d at 1260. *See also Liberty Mut. Fire Ins. Co. v. Yoder,* 112 F. App'x 826, 827 (3d Cir. 2004)(insurance policy must be construed against the drafter); *Perry v. Fleetboston Fin. Corp.*, No. 04-507, 2004 U.S. Dist. LEXIS 12616, at *12 (E.D. Pa. July 6, 2004) ("this Court must construe the ambiguous contract language against the drafter.").

This Court finds that Section 13 of the JVA does not clearly direct the parties to arbitrate. A directive to first pursue mediation and to apply the laws of arbitration is not a clear and unmistakable agreement to resolve disputes exclusively through arbitration. The second sentence of Section 13 offers no clarification and instead, conditions the first directive with a vague alternative: "if this is not suitable to the parties hereto." (Defs.' Mot. Compel Arb'n, Ex. A, §13.) Ambiguity exists regarding whether unsuitability can be determined by either party, or must be agreed to by both parties in order for the alternative to be invoked. Moreover, the provision is ambiguous with respect to what the alternative of applying "laws of the Commonwealth of Pennsylvania" and "each may consult their attorney" might mean. (Defs.' Mot. Compel Arb'n, Ex. A, §13.) Accordingly, the JVA's arbitration provision's language is entirely too ambiguous to constitute a clear and unmistakable agreement by the parties to resolve disputes by arbitration alone, and is therefore not enforceable.

## V. CONCLUSION

For the reasons set forth above, Harris Defendants' Motion to Compel Arbitration shall be denied.

An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II      J.