# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA LAWSON,<br>   *Plaintiff* | : | |
| v. | : | CIVIL ACTION<br>NO. 18-1912 |
| CITY OF PHILADELPHIA;<br>FRANK BRESLIN; FRANCES BECKLEY;<br>IOLA HARPER; and, HARRIS & HARRIS<br>   *Defendants*. | : | |

## **MEMORANDUM**

JONES, II     J.                                                                         March 2, 2020

### I.    INTRODUCTION

Pending before this Court are Defendants City of Philadelphia, Frank Breslin, Frances Beckley, and Iola Harper's[1] Motion to Dismiss, as well as Defendant Harris & Harris' Motion to Dismiss Plaintiff Tina Lawson's Amended Complaint. Said Motions seek dismissal of three federal claims brought pursuant to 42 U.S.C. §§ 1981 & 1983, *et seq.*,[2] as well as thirteen common law claims, including Whistleblower, Retaliation, Tortious Interference with Contractual Relations, Breach of Contract, Fraud, and Unjust Enrichment.[3] For the reasons set forth below, City Defendants' Motion shall be granted

---

[1] Hereinafter "City Defendants."
[2] Counts I, II and III.
[3] Counts IV through XVII, excluding Count XV, which does not appear in Plaintiff's Amended Complaint.

as to Plaintiff's three federal claims and the court shall decline to exercise supplemental jurisdiction over the remaining state law claims, thereby rendering the Harris Defendant's Motion moot.

## II. HISTORY

### A. Factual Background

Plaintiff Lawson owns and operates a law firm in Philadelphia that is a certified minority business in the Commonwealth of Pennsylvania under Minority Businesses and Women or Disabled Owned Business Enterprises ("M/W/DSBEs").[4] (Am. Compl. ¶¶ 7-8.) On July 1, 2016, Lawson entered into a joint venture with Defendant Harris & Harris (hereinafter "Harris"). (Am. Compl. ¶ 15.)[5] Harris is a debt collection company duly registered as a "domestic" LLC in Chicago, Illinois. (Am. Compl. ¶¶ 10-11.) The joint venture was created so that Lawson and Harris could jointly bid on the City of Philadelphia's "Department of Revenue Contract—Collection for Delinquent Real Estate Taxes and Other Municipal Claims Eligible for Sheriff's Sale" (hereinafter "Contract I") that gave preference to M/W/DSBE applicants. (Am. Compl. ¶¶ 16-18.) On or about October 15, 2016, Lawson and Harris were allegedly awarded Contract I, the terms of which stated "those who were awarded the contract could expect to begin providing services immediately after January 2017." (Am. Compl. ¶¶ 23-25.) Contract I required the joint venture agreement to meet certain requirements, such as inclusion of an anti-

---

[4] Registered M/W/DSBEs receive preference in the City contracting process, as well as the City's for-profit and non-profit partners. CITY OF PHILADELPHIA, https://www.phila.gov/services/business-self-employment/for-vendors/register-as-a-minority-woman-or-disabled-owned-business/ (last visited Feb. 24, 2020).
[5] Defendant Arnie Harris was dismissed from this matter via Stipulation by the parties. (ECF No. 40). The Harris & Harris business remains as a defendant.

discrimination policy form, which indicated that "Lawson would receive 100% of litigation work and 'Sheriff's sales,' but only 17% of the total proceeds." (Am. Compl. ¶ 33.) Lawson alleges that this policy form did not represent the joint venture agreed upon between Harris and Lawson[6] and that Harris submitted the form without Lawson's knowledge or consent. (Am. Compl. ¶¶ 34-36.)

Once the contract was awarded to Lawson and Harris, Lawson alleges Defendant Beckley, Chief Counsel to the City of Philadelphia's Revenue Department, only contacted Harris with information pertinent to the award and suggested Lawson become a subcontractor to Harris. (Am. Compl. ¶¶ 45-47.) Subsequently, Harris notified Lawson that Beckley stated the joint venture would not receive any work from Contract I in 2017, which Lawson later confirmed with Beckley. (Am. Compl. ¶¶ 49-51.) Following this news, Lawson was allegedly carbon copied on multiple emails with discussions of replacing or removing Lawson from the joint venture. (Am. Compl. ¶ 55.)[7] Beckley also allegedly re-submitted the anti-discrimination policy form without Lawson's knowledge or consent. (Am. Compl. ¶¶ 61-62.) Lawson believed these actions to be part of a conspiracy to prevent Lawson from participating in Contract I, and thus, she reported this alleged discrimination to Defendant Iola Harper, the executive director for the Office of Equal Opportunity in Philadelphia ("OEO"). (Am. Compl. ¶¶ 14, 67.) After receiving the complaint, Harper allegedly never reported same to the Mayor's office or conducted a formal investigation. (Am. Compl. ¶ 69.)

---

[6] Lawson contends the parties were to equally share the proceeds. (Am. Compl. ¶ 35.)
[7] Plaintiff has not provided any of these emails as exhibits to her Amended Complaint.

Lawson continued to report to several other departments of the City of Philadelphia, including Councilwoman Cindy Bass, who called for a meeting between Lawson and Defendants in June 2017.[8] (Am. Compl. ¶¶ 72-77.) Defendant Breslin, Chief Revenue Commission for the City of Philadelphia, attended the meeting and allegedly stated "it was never about Lawson getting the work, it was always about Harris getting the contract." (Am. Compl. ¶ 79.) Lawson was allegedly advised that she would never receive another contract from the City of Philadelphia. (Am. Compl. ¶ 80.) Also during the meeting, Mario Crestani of the OEO allegedly requested Harris to revise the documentation submitted to reflect the joint venture between them and Lawson, but Harris never did so. (Am. Compl. ¶¶ 81-84.)

Subsequently, Lawson claims Harris submitted a second proposal (hereinafter "Contract II") for "general consulting services with the City." (Am. Compl. ¶ 95.) Lawson acknowledged that she and Harris discussed Contract II, but never officially entered into an agreement, and Harris used Lawson's credentials on the application without her permission. (Am. Compl. ¶¶ 98-99.) On the bid for Contract II, Lawson was listed as the "minority sub-contractor in the awarded bid and would receive 12 percent of the contract, while Harris would retain 88%." (Am. Compl. ¶ 100.) Harris was awarded Contract II, and Lawson "demanded" the profit she was entitled to. (Am. Compl. ¶¶ 104-05.) Harris responded to Lawson with a request for time to "determine if there was suitable work for her." (Am. Compl. ¶¶ 106-07.) Thereafter, communication ceased

---

[8] Lawson further contends she reported these alleged acts of discrimination to the following departments: "The Revenue Department, the Law Department, the Inspector General's Office, the City of Philadelphia's Procurement Department, OEO, CDIO, Councilwoman Cindy Bass, and the Inspector General." (Am. Compl. ¶ 90.)

4

between Lawson and Harris, while Lawson alleges that Harris "accepted and completed work on the second contract." (Am. Compl. ¶¶ 107-08.)

### B. Procedural Background

On May 7, 2018, Lawson filed her Original Complaint in the United States District Court for the Eastern District of Pennsylvania. (ECF No. 1.) Defendants City of Philadelphia, Breslin, Beckley, and Harper responded with a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 16.) This Court granted Defendants' Motion to Dismiss, with leave for Plaintiff to amend. (ECF No. 31.)[9] Upon amendment (ECF No. 36), Defendants filed the instant Motions to Dismiss.[10] (ECF Nos. 37, 39.)

Plaintiff's Amended Complaint contains the following claims: equal protection and due process violations under 42 U.S.C. §§ 1981, *et seq.* (Count I); violation of procedural due process under 42 U.S.C. §§ 1983, *et seq.* (Count II); retaliation under 42 U.S.C. §§ 1983, *et seq.* (Count III); violations of Pennsylvania's Whistleblower Law (Counts IV & V); Tortious Interference with Existing Contractual Relationships (Counts VI, VII, VIII, IX, & X); Breach of Contract (Count XI); Fraud (Counts XII, XIII, XVI, & XVII); and, Unjust Enrichment (Count XIV).[11] Counts I-V are against Defendants City of Philadelphia, Breslin, Beckley, and Harper. Counts VI-XII are against all Defendants, and Counts XIII-XVII are against Defendant Harris.

---

[9] Plaintiff has mislabeled her most recent Complaint as "Second Amended Complaint." (ECF No. 36). Said Complaint is actually her *first* Amended Complaint.
[10] Defendant Arnie Harris has since been dismissed from the case, therefore all claims against him are moot. (ECF No. 40.)
[11] *See* supra n.3.

## III. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). An inquiry into facial plausibility consists of three parts: "(1) identifying the elements of the claim; (2) reviewing the complaint to strike conclusory allegations; and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

It is incumbent upon a plaintiff to plead with clarity. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515 F.3d at 233 (internal quotations marks and citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

### A. Rule 8

Plaintiff's Amended Complaint contains many of the same deficiencies identified in her Original Complaint. It is incumbent upon a plaintiff to plead with clarity. To that end, "a Complaint [must] be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim[.]" *Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012) (quotation marks and citations omitted). .

### B. Claims Brought Pursuant to 42 U.S.C. § 1981

To state a claim under 42 U.S.C. § 1981, a plaintiff must prove: "(1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Further, to state a violation of Section 1981, "[a] specific factual basis must be pled to create the inference of discrimination." *Frederick v. Se. Pa. Transp. Auth.*, 892 F. Supp. 122, 125 (E.D. Pa. 1995).

Plaintiff herein has not provided the necessary factual allegations to plausibly show the City of Philadelphia interfered with her right to make and enforce contracts on the basis of Plaintiff's race. Plaintiff is a certified minority business owner. However, Plaintiff has yet to provide facts for this Court to reasonably infer that the alleged actions of the City and its employees were because of Plaintiff's minority status. (Am. Compl. ¶ 8.) Plaintiff alleges the City and its employees Breslin, Beckley, and Harper, hindered her

constitutional right to a fair and impartial process in bidding for a contract through their policies and custom. (Am. Compl. ¶¶ 111, 114.) Plaintiff further alleges that the City, Beckley, Breslin, and Harper "acted in concert action to divest Plaintiff of her joint venture with Harris." (Am. Compl. ¶ 128.) These conclusory facts do not support Plaintiff's bald assertion that she was denied her constitutional rights under the law because of her race, as required under Section 1981. *See Dixon v. Women's Christian Alliance Foster Care Agency*, No. 13-3730, 2014 U.S. Dist. LEXIS 135920, at *11 (E.D. Pa. Sept. 26, 2014) (holding "[t]he facts as alleged do not support Plaintiffs' otherwise bald contention that they were fired because of their race, as required for a § 1981 claim").

With specific regard to the City of Philadelphia as a defendant, the Third Circuit has explicitly stated that "no private right of action exists against state actors under 42 U.S.C. § 1981." *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). In other words, "while § 1981 creates rights, § 1983 provides the remedy to enforce those rights against state actors." *Id*. at 116.

In view of the foregoing, the allegations contained within Plaintiff's Amended Complaint are insufficient to survive a Motion to Dismiss and further amendment would be futile. Accordingly, Count I against the City and its agents under Section 1981 shall be dismissed with prejudice.

## C. Claims Brought Pursuant to 42 U.S.C. § 1983

Section 1983 of Title 42 "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution of the United States." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). In order to establish a *prima facie* case under Section 1983, a Plaintiff must "demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (stating in order to seek relief under Section 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury").

Municipal liability arises under Section 1983 only when a constitutional deprivation results from an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). Under *Monell*, a plaintiff can show that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Additionally, a plaintiff must show that this policy or custom directly caused the injury. *Id.* at 1480.

Individual state actors may be liable under Section 1983 only where he or she played an "affirmative part" in the alleged misconduct. *Mason v. City of Philadelphia*, Civ. No. 13-5163, 2014 U.S. Dist. LEXIS 133243, at *5 (E.D. Pa. 2014) (citing *Evancho*

9

*v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations of "personal direction of or actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. A showing of actual knowledge must be made with "appropriate particularity." *Id.* A plaintiff can also show individual state actor liability by pleading that the defendants were policymakers who acted "with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm." *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

In this case, the first fourteen (14) paragraphs of Plaintiff's Section 1983 claim are mere recitations of the required elements and boilerplate conclusions of law. (Am. Compl. ¶¶ 130-43.) The new allegations that have been added consist of nothing more than mere speculation of a conspiracy theory and, again, conclusions of law. (Am. Compl. ¶¶ 144-47.) It is well settled that "[a] plaintiff cannot prevail on such a claim where he has alleged only a conclusory existence of a conspiracy in an attempt to impute the actions complained of to all defendants." *Allen v. McKee*, Civil Action No. 92-CV-6361, 1993 U.S. Dist. LEXIS 5133, at *13 (E.D. Pa. 1993). Despite an opportunity to properly cure this defect on amendment, Plaintiff has failed to do so. Plaintiff's claim that she was deprived of the right to contract by reason of her race and a conspiracy against her by and between all Defendants, is grounded upon nothing more than

conjecture. Without the necessary factual allegations to plausibly show that Plaintiff had a federally protected interest, her Amended Complaint does not fulfill the first prong under a Section 1983 analysis. Because Plaintiff has failed to state a claim with regard to the underlying Section 1983 cause of action, her retaliation claim pursuant thereto (Count III) necessarily fails. Accordingly, Counts II and III shall be dismissed.

### D. Amendment

Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

Inasmuch as the conditions for amendment as a matter of course are absent here, amendment is only permitted by leave of court or with the written consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Leave must be freely granted "when justice so requires." *Id.* However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the legal standards of Rule 12(b)(6) must be applied. *Id.*; *see also Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (permitting courts to deny leave to amend when such amendment would be futile).

In this case, Plaintiff's counsel did ask for leave to amend in the event the court dismisses Plaintiff's claims. (ECF No. 43 at 28.) Plaintiff has already been given an opportunity to amend. As is evident from the foregoing analysis of Plaintiff's amended federal claims—as well as consideration of the fact that this Court was very specific in

pointing out the deficiencies of Plaintiff's original Complaint in its Order pertaining to the first round of motions to dismiss, yet, she failed to cure same[12]—any further attempt to amend would be futile. *See Travelers Indem. Co. v. Cephalon, Inc.,* 620 F. App'x 82, 87 (3d Cir. 2015) (affirming denial of leave to amend after "District Court [ ] reviewed the SAC and determined that it 'fail[ed] to cure the deficiencies' that the [court] identified in dismissing the Amended Complaint."); *see also Quinn v. Badolato,* 709 F. App'x 126, 131 (3d Cir. 2017) (affirming District Court's denial of request to amend after said court determined "the facts set forth in [Plaintiff's] complaint fail, as a matter of law, to establish a constitutional violation of § 1983 [and] this Court cannot foresee any additional facts that could save Plaintiff's claims.") (quoting *Quinn v. Badolato*, No. CV 16-0591, 2016 U.S. Dist. LEXIS 100592, at *27 (E.D. Pa. July 29, 2016)); *Otto v. Williams*, 704 F. App'x 50, 54 (3d Cir. 2017) ("District Court did not abuse its discretion in dismissing this case with prejudice when none of the highlighted allegations rise to a due process violation, as an amendment fleshing out the details of those allegations—in a third amended complaint—would still fail to state a claim upon which relief could be granted."); *United States ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (affirming denial of leave to amend on basis of District Court's observation "that [Defendants'] motion to dismiss papers put [Plaintiff] on notice of the deficiencies in the FAC and [Plaintiff] had nonetheless failed to cure those deficiencies in the SAC.").

Accordingly, Counts I through III of Plaintiff's Amended Complaint shall be dismissed with prejudice.

---

[12] *See* ECF No. 31.

### E. Supplemental Jurisdiction

The remainder of Plaintiff's Amended Complaint contains common law claims brought under Pennsylvania state law. The criteria for assessing whether or not a court should exercise supplemental jurisdiction is clear:

> The district courts may decline to exercise supplemental jurisdiction over a claim. . . . if-- (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 1367(c).

The Third Circuit has directed that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Ashton v. City of Uniontown*, 459 F. App'x 185, 191 (3d Cir. 2012) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see also Abulkhair v. Google LLC,* No. 18-1584, 2018 U.S. App. LEXIS 16476, at *3 (3d Cir. 2018) ("[B]ecause all of Abulkhair's federal claims were subject to dismissal, it was appropriate to dismiss his state-law claims, too.") (citing *Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000)); *Edelstein v. Wilentz,* 812 F.2d 128, 134 (3d Cir. 1987) (affirming district court's "refusal to exercise [supplemental] jurisdiction over a state law claim after dismissal of all federal claims prior to trial.").

In this case, the federal claims over which this Court had original jurisdiction are being dismissed with prejudice. Moreover, there exist no concerns of judicial economy, convenience, or fairness that would justify this Court's exercise of jurisdiction over the

remaining state law claims. Accordingly, this Court declines to exercise supplemental jurisdiction over same, thereby negating the need for a merits assessment of said claims.

## V. CONCLUSION

For the reasons set forth above, Defendants City of Philadelphia, Frank Breslin, Frances Beckley, and Iola Harper's Motion to Dismiss (ECF No. 27) shall be GRANTED as to all federal claims. Defendant Harris & Harris' Motion to dismiss shall be denied as moot by reason of this Court's ruling that it will not exercise supplemental jurisdiction over the remaining state law claims, the dismissal of which shall be without prejudice to Plaintiff's right to raise them in State court.

An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II   J.